NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3125

WILFREDO RAMOS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Wilfredo Ramos, of Bronx, New York, pro se.

Teresa A. Gonsalves, Appellate Counsel, Appellate Division, Law Department, United States Postal Service, of Washington, DC, for respondent. With her on the brief were Lori J. Dym, Chief Counsel; and Gregory G. Katsas, Acting Assistant Attorney General, Civil Division, United States Department of Justice, of Washington, DC. Of counsel was Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2008-3125

WILFREDO RAMOS,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

Petition for review of the Merit Systems Protection Board in
NY-0752-07-0082-I-1.

_____

DECIDED: September 4, 2008
_____

Before MICHEL, <u>Chief Judge</u>, MAYER, <u>Circuit Judge</u>, and STEARNS,[*] <u>District Judge</u>.

PER CURIAM.

DECISION

Wilfredo Ramos seeks review of a final decision of the Merit Systems Protection
Board ("MSPB" or "Board") dismissing for lack of jurisdiction his appeal relating to his
removal for violating a last chance settlement agreement ("Agreement").  <u>See</u> <u>Ramos v.</u>
<u>U.S. Postal Serv.</u>, No. NY-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-I-1 (M.S.P.B. May 4, 2007) ("<u>Bench Decision</u>"),
<u>review denied</u>, <u>Ramos v. U.S. Postal Serv.</u>, No. NY-0752-07-0082-I-1 (M.S.P.B. Nov.

---

[*]       Honorable Richard G. Stearns, District Judge, United States District Court
for the District of Massachusetts, sitting by designation.

21, 2007) ("Final Order"). Because we agree with the MSPB that Ramos failed to establish the Board's jurisdiction over his appeal, we affirm.

BACKGROUND

Ramos was employed as a Letter Carrier with the United States Postal Service ("USPS") in Flushing, New York. On September 6, 2005, he entered into a written Last Chance Settlement Agreement, in exchange for modifying an August 22, 2005 proposed removal to a 14-day suspension. As part of the Agreement, he affirmed that the proposed removal was "[j]ust and [p]roper" and he agreed to "adhere to Postal rules and regulations, conduct himself in a professional, pleasant and safe manner . . . [and] maintain satisfactory work performance." The Agreement defined "satisfactory work performance" as "completing the grievant's job assignment in the allotted time, and abiding by all Postal rules and Regulations, including but not limited to the Employee & Labor Relations manual, and the M-41 City Carriers duties and Responsibilities." The Agreement stipulated that Ramos would be placed on general probation for two years, and his failure to abide by the terms of the agreement would be "considered JUST CAUSE FOR REMOVAL." (emphasis in original). Ramos also agreed to "waive any and all administrative appeals and/or judicial actions relative to the removal" if he failed to comply with the Agreement terms.

On September 2, 2006, Ramos was assigned to Parcel Post Route 46. His supervisor, Michael Gallo, testified that after Ramos completed his parcel deliveries that afternoon and had returned to the Post Office, Gallo noticed several priority packages still on the platform. When questioned about them, Ramos told Gallo the packages were for businesses closed on Saturday and could thus be held until Monday. Gallo

2008-3125                    2

saw apartment numbers on the packages and told Ramos that they needed to be delivered. Gallo testified that Ramos then "blew up and used profanity," and that when he told Ramos to stop cursing and to deliver the packages, Ramos stated in response, "F--- you. I ain't doing it." Ramos then went to lunch before leaving for the day. Another USPS employee, Anne Napoli, was in the vicinity when the confrontation occurred, and her testimony regarding the incident corroborated Gallo's testimony. Andrew Amitrano, Manager of Customer Service, also testified that about three or four months prior to the September 2 incident, there had been another incident involving a loud outburst by Ramos towards another supervisor.

Ramos' account of the incident is entirely different. He testified that he was eating lunch when Gallo informed him that he needed to go back out to deliver the remaining packages. When he told Gallo that he was on his lunch break, Gallo appeared upset and walked away. Gallo then returned and told Ramos he was giving him a direct order. Ramos testified that when he asked Gallo if he could finish his lunch, Gallo offered no response and simply walked away.

The USPS held a pre-disciplinary interview on September 7, 2006, with Ramos and his union representative. Though Ramos later contested it, Gallo's notes from the interview indicate that Ramos admitted in the interview that "he might have used profanity once" during the confrontation in question. Amitrano was also present at the pre-disciplinary interview and corroborated Gallo's testimony concerning Ramos' statement. On September 30, 2006, Gallo issued a Notice of Proposed Removal to Ramos for violating the Last Chance Settlement Agreement, specifically noting his use of profanity with a supervisor and his failure to follow the instructions he was given to

deliver the remaining parcels. On November 16, 2006, a Letter of Decision was issued to Ramos, detailing that his removal would be effective November 24, 2006. Ramos filed a grievance with the USPS and a decision was issued on December 28, 2006, that found Ramos' grievance to be without merit because of his "failure to comply" with the direct orders of a supervisor, use of profanity and "very poor record of discipline."

Ramos appealed his removal to the MSPB, and the Administrative Judge ("AJ") determined that the Board lacked jurisdiction over the appeal because "the preponderant credible evidence does not support a determination that [Ramos] did not breach the last chance agreement." Bench Decision at 19. In November 2007, the Board denied Ramos' petition for review. Final Order at 2.

DISCUSSION

This court must affirm a decision of the MSPB unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether the Board has jurisdiction is a question of law that we review de novo, but we must uphold the Board's underlying factual findings "unless those findings are not supported by substantial evidence." Bolton v. Merit Sys. Prot. Bd., 154 F.3d 1313, 1316 (Fed. Cir. 1998). "Substantial evidence is defined as 'the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion even though other reasonable persons might disagree,'" and is "'a lower standard of proof than preponderance of the evidence.'" Giove v. Dep't of Transp., 230 F.3d 1333, 1338 (Fed. Cir. 2000) (quoting 5 C.F.R. § 1201.56(c)(1)).

Here, Ramos argues that there were insufficient facts in the record to establish just cause for termination. However, the Agreement explains that a failure on Ramos' part to comply with the stipulations contained in the Agreement provides "<u>JUST CAUSE FOR REMOVAL</u>." (emphasis in original). Additionally, the Agreement stipulates that Ramos' failure to abide by the Agreement terms will result in a waiver as to "all administrative appeals" relative to his removal. It is well settled that an employee can waive his right to appeal in a last chance settlement agreement, <u>Gibson v. Dep't of Veterans Affairs</u>, 160 F.3d 722, 725 (Fed. Cir. 1998), and that after such a waiver, the employee may only establish the MSPB's jurisdiction over his appeal if he proves by a preponderance of the evidence that: (1) he complied with the terms of the Agreement; (2) the employer breached the Agreement in some way; or (3) he did not knowingly and voluntarily enter into the Agreement. <u>Link v. Dep't of Treasury</u>, 51 F.3d 1577, 1582 (Fed. Cir. 1995).

Ramos contends in his reply brief that he was forced to sign the Agreement, and only signed under protest. But the AJ found that Ramos willingly and voluntarily entered into the Agreement, and this finding is supported by substantial evidence. Ramos was represented by a union official while discussing the terms of the Agreement, and he acknowledged that he "underst[ood] this Agreement without reservation, duress, or coercion on the part of anyone." Ramos may have faced an unpleasant choice between signing the Agreement and contesting his August 22, 2005 proposed removal, but that does not render his choice coerced. <u>Cf.</u> <u>Schultz v. United States Navy</u>, 810 F.2d 1133, 1136 (Fed. Cir. 1987) ("[W]here an employee is faced merely with the unpleasant

alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act.").

The AJ also found that Ramos breached the Agreement, basing this finding primarily on credibility determinations as to the witnesses providing testimony. The AJ credited the testimony of Gallo over that of Ramos, particularly noting that Gallo's testimony was corroborated by the testimony of Napoli, whom the AJ determined had "testified calmly, deliberately, without any hesitation, clearly, consistently and convincingly." The AJ determined that Ramos' testimony was "inconsistent in a material way" and caused him "to have doubts about the reliability of the version of events that was given by [Ramos]." In order for the AJ to have concluded that Ramos' testimony was credible, as opposed to that of Gallo, the AJ would have had to disregard the testimony of Gallo, Napoli, and Amitrano – essentially concluding that the three witnesses were lying. This court has consistently held that "the evaluation of witness credibility is a matter within the discretion of the AJ and is virtually unreviewable." Frey v. Dep't of Labor, 359 F.3d 1355, 1361 (Fed. Cir. 2004) (internal quotations omitted). As such, we must accept the AJ's determination of credibility because the testimony relied on here was not "inherently improbable or discredited by undisputed evidence or physical fact." Gibson, 160 F.3d at 726 (internal quotation omitted).

Finally, although Ramos does not directly contend that the USPS breached the Agreement, he argues that the AJ failed to consider the fact that he was on an authorized lunch break at the time the orders were given to him, and that this was in direct violation of the Fair Labor Standards Act ("FLSA"). However, there is no indication in the record that Ramos raised this claim before the AJ or the Board. Because this

court does not allow appellants to "raise issues on appeal for the first time," <u>Kachanis v. Dep't of Treasury</u>, 212 F.3d 1289, 1293 (Fed. Cir. 2000), the issue of whether Gallo's direct order violated the FLSA is not properly before us. Further, even if Gallo's action was improper, Ramos should nevertheless have complied with the order under § 665.15 of the Employee & Labor Relations Manual ("ELM"), which states that employees are obligated to "obey the instructions of their supervisors." The ELM also explains that in the event "an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing . . . or may appeal through official channels." Thus, if Ramos believed the order from Gallo was improper, he should still have complied with the order and later followed up through the appropriate channels.

CONCLUSION

For the foregoing reasons, we affirm the decision of the Board dismissing Ramos' appeal for lack of jurisdiction.

COSTS

No costs.